1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                    FOR THE EASTERN DISTRICT OF CALIFORNIA

8    CHRISTOPHER DAVID BARAJAS,

9              Petitioner,              No. 2:08-cv-1337-JFM (HC)

10        vs.

11   MICHAEL MARTEL, Warden,

12             Respondent.              <u>ORDER</u>

13   _____/

14        Petitioner is a state prisoner proceeding through counsel with an application for a

15   writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Both parties have consented to the

16   jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c).  <u>See</u> Docket Nos. 12 & 13.

17   Petitioner challenges his 2005 conviction on charges of kidnaping for the purpose of sexual

18   assault, two counts of forcible oral copulation, three counts of forcible rape, and one count of

19   forcible sodomy, and the sentence of life plus thirty years.  Petitioner raises two claims in his

20   petition, filed June 12, 2008, that his prison sentence violates the Constitution.

21                         PROCEDURAL HISTORY

22        Petitioner filed a timely direct appeal in the California Court of Appeal, Third

23   Appellate District, which was denied in a reasoned opinion filed January 2, 2007.

24        Petitioner filed a petition for review in the California Supreme Court which was

25   denied without comment.

26        Petitioner filed the instant petition on June 12, 2008.

FACTS[1]

Prosecution's Case

On March 20, 1997, at approximately 5:30 p.m., R.W., then 17 years old, was walking to a friend's house when [petitioner] approached her driving a van.[2] (Prior to the March 1997 incident, R.W. and [petitioner] had met informally three times.) R.W. accepted [petitioner's] offer of a ride. She told [petitioner] she wanted to go in the direction she had been walking, but [petitioner] began driving in the opposite direction. [Petitioner] told R.W. that he wanted to talk to her. She agreed to talk to him and continued riding in the van.

R.W. testified that she felt uncomfortable from the moment she got into the van. She eventually told [petitioner] of her discomfort, and that she did not want to talk anymore. When [petitioner] drove her to an unfamiliar part of town, she repeatedly told him to take her back. She also said she wanted to get out of the car. [Petitioner] eventually stopped the car on a dead-end street in a secluded area.

[Petitioner] then began kissing R.W.'s neck and fondling her breasts. She repeatedly asked him to stop and tried to pull away, but [petitioner] continued to pull her back. [Petitioner] forced R.W. to perform oral sex on him approximately three times by pulling her hair. He then told her to get in the back seat, where he forced her to have sexual intercourse three times. He also forced her to have anal sex, causing her significant pain and discomfort.

[Petitioner] then told R.W. to get out of the van and get dressed. [Petitioner] started the van and R.W. asked him to open the door so she could get back in. [Petitioner] told R.W. that he would take her home but then drove off without her. R.W. began walking down the street when she fortuitously encountered a deputy sheriff on patrol. R.W. told the deputy that she had been raped and relayed some of the incident to him. The deputy took R.W. to the U.C. Davis Medical Center for an evidentiary examination.

A nurse practitioner at the hospital conducted a sexual assault examination on R.W. During the examination, R.W.'s external genitalia were tender to palpation with a small area of discoloration. She had multiple superficial tears at the bottom of the vaginal opening, and there was a finding of tenderness to the

---

[1] The facts are taken from the opinion of the California Court of Appeal for the Third Appellate District in <u>People v. Barajas</u>, No. C049194 (January 2, 2007), a copy of which is attached as Exhibit 1 to the Petition, filed June 12, 2008.

[2] All events that took place on the evening of March 20, 1997, will hereafter be referred to as "the March 1997 incident."

interior and sides of the vaginal vault. The nurse practitioner also observed multiple tender superficial tears at R.W.'s sphincter. The nurse practitioner testified that the finding of tenderness suggested the injuries were recent rather than old. She added that tears in both the vaginal and anal area are commonly found in the context of assaultive complaints.

The nurse practitioner collected vaginal and oral swabs from R.W. to record any sperm or foreign material, but was unable to collect anal swabs due to R.W.'s discomfort in that area. Areas on R.W.'s body also tested positive for foreign material, including an area on her right buttock. The nurse practitioner testified that her medical examination of R.W. was consistent with R.W.'s account of what had occurred. The findings of the evidentiary examination did not conclusively establish nonconsensual sexual activity. However, in the nurse practitioner's exam experience, R.W.'s discomfort in the anal area and unwillingness to allow use of an anoscope was less typical of consensual anal sex.

R.W. did not see [petitioner] again after March 20, 1997.

In 2003, a criminalist from the district attorney's office reported to the sheriff's office a DNA match, linking sperm evidence obtained from a vaginal swab taken from R.W.'s 1997 evidentiary examination to [petitioner's] DNA profile.

On March 13, 2003, the police met with R.W. and went over the statement she had given to the deputy immediately following the March 1997 incident. R.W. said the statement was accurate and she added more information. The police also showed R.W. a six-person photographic lineup. R.W. indicated that "Number two [petitioner's photo] looks like him."

On April 17, 2003, the police obtained an oral swab sample from [petitioner]. The DNA profile from R.W.'s vaginal swab from the 1997 evidentiary examination matched the profile on [petitioner's] oral swab sample.

Defense case

[Petitioner] met R.W. in late February or early March 1997; they began talking, and later that evening engaged in consensual oral sex and sexual intercourse. They met again on another occasion but did not have sex.

On March 20, 1997, [petitioner] picked up R.W. in his Jeep Cherokee at her friend's house.  They talked about going shopping. R.W. never indicated that she wanted [petitioner] to stop the car, turn around, or that she was uncomfortable. After driving for some time, [petitioner] parked the car. They began kissing each other and R.W. performed consensual oral sex on [petitioner]. Then they

3

1   engaged in consensual sexual intercourse in the back seat of the
    car. [Petitioner] did not engage in anal intercourse with R.W. at
2   any time.

3       [Petitioner] and R.W. then got into an argument about whether
    [petitioner] was going to take her shopping. [Petitioner] told R.W.
4   that she was acting like her mother (whom R.W. had confided to
    [petitioner] was a prostitute); this enraged R.W. [Petitioner] told
5   R.W. to get out of the car, which she did. [Petitioner] then drove
    off.

6
        [Petitioner] saw R.W. again a few months after the March 1997
7   incident.

8       At trial, R.W.'s mother testified that indeed she was a prostitute
    in 1997.
9
        A physician specializing in child physical and sexual abuse also
10  testified for the defense.  The physician had reviewed the
    colposcopic photographs taken during R.W.'s evidentiary
11  examination. It was not possible for the doctor to discern from
    these photographs whether R.W. had engaged in consensual or
12  nonconsensual intercourse. The physician testified, however, that it
    was possible for the nurse practitioner's findings and for R.W.'s
13  complaint of tenderness to be consistent with consensual sexual
    conduct.
14
        Several friendly witnesses testified to [petitioner's] character for
15  truthfulness, nonviolence, and other aspects of good character.

16      [Petitioner] had been convicted in 1998 of various sexual
    offenses arising from an incident that occurred in October 1997.
17  These offenses were elicited during [petitioner's] testimony in the
    present case.
18

19  (People v. Barajas, slip op. at 2-6)

20                              ANALYSIS
21  I.  Standards for a Writ of Habeas Corpus

22      Federal habeas corpus relief is not available for any claim decided on the merits in

23  state court proceedings unless the state court's adjudication of the claim:

24          (1) resulted in a decision that was contrary to, or involved an
            unreasonable application of, clearly established Federal law, as
25          determined by the Supreme Court of the United States; or

26          (2) resulted in a decision that was based on an unreasonable

                                  4

determination of the facts in light of the evidence presented in the
State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at different result.  Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-406 (2000)).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.  Williams, 529 U.S. at 413.  A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")  The court looks to the last reasoned state court decision as the basis for the state court judgment.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).

II.  Petitioner's Claims

A.  Claim One

Petitioner's first claim is that a DNA sample was seized without particularized suspicion in violation of the Fourth Amendment.

/////

/////

1    Prior to the instant criminal offenses, petitioner provided a sample for forensic

2   identification purposes to the DNA database as a result of his conviction for various sexual

3   offenses in 1998.  (CT 206, 511.)

4    The crimes underlying petitioner's conviction took place on March 20, 1997.  (RT

5   71-73, 76, 103-12, 119-24, 126-32, 135.)  The victim contacted police after the crimes were

6   completed, and underwent a sexual assault examination at U.C. Davis Medical Center.  (RT 237,

7   241, 288-89.)  Vaginal swabs were used to collect sperm samples from the victim.  (RT 320.)

8   On October 18, 2002, a DNA sample from the sperm samples collected from the victim was

9   submitted for electronic comparison with the samples located in the convicted offender database.

10  The DNA sample taken from the victim matched a DNA sample submitted by petitioner to the

11  database.  (CT 30.)

12    On April 17, 2003, another DNA sample was taken from petitioner.  (RT 433-38.)

13  A criminalist then compared the DNA contained from the sperm sample collected from the

14  victim with the DNA taken from petitioner's saliva and determined the two samples had

15  matching genetic profiles.  (RT 465-69.)  The trial court denied petitioner's motion to suppress

16  this evidence.  (RT 13-14; 40-41.)

17    Petitioner filed a timely appeal in the California Court of Appeal for the Third

18  Appellate District, claiming that the collection of his DNA pursuant to the act, without

19  particularized suspicion, violated the Fourth Amendment.  The state court rejected this claim on

20  the ground that:

21    Three California Courts of Appeal, including this one, have upheld
    the constitutionality of the of the Act against Fourth Amendment

22    challenges. (See *People v. Adams* (2004) 115 Cal.App.4th 243;
    *Alfaro v. Terhune* (2002) 98 Cal.App.4th 492; *People v. King*

23    (2000) 82 Cal.App.4th 1363.) We agree with the constitutional
    analysis in these cases.

24     . . .

25    Although the U.S. Supreme Court has yet to address DNA database
    specifically, we note the Court recently provided more guidance

26    regarding searches absent individualized suspicion or a warrant in

6

*Samson v. California* (2006) 547 U.S. [843] [165 L.Ed.2d 250]. The Court there held that suspicionless searches of California parolees pursuant to section 3067, subdivision (a), do not violate the Fourth Amendment. (*Samson, supra*, 547 U.S. [843] at p. [856] [165 L.Ed.2d at p. 262].) The Court stated in *Samson*, "[A]lthough this Court has only sanctioned suspicionless searches in limited circumstances, namely programmatic and special needs searches, we have never held that these are the only limited circumstances in which searches absent individualized suspicion could be 'reasonable' under the Fourth Amendment." (*Samson, supra*, 547 U.S. at p. [855] [165 L.Ed.2d at p. 261, fn. 4.)

(People v. Barajas, slip op. at 7-8.)

California's DNA and Forensic Identification Data Base and Data Bank Act of 1998, Cal.Penal Code §§ 295, et seq., applied to petitioner upon his conviction in 2005, and it comports with the Fourth Amendment.  See Alfaro v. Terhune, 98 Cal.App.4th 492, 120 Cal.Rptr.2d 197, 208 (2002) (California statute); United States v. Kincade, 379 F.3d 813, 839 (9th Cir.2004) (en banc) (similar federal statute).  See also Rise v. Oregon, 59 F.3d 1556, 1562 (9th Cir.1995) (Oregon statute requiring prisoners to provide DNA samples does not violate the Ex Post Facto Clause because the statute's purpose is to create a data bank to help identify and prosecute criminals, not punish convicts.)  California's DNA law has the same purpose as Oregon's DNA law.  See Cal.Penal Code § 295(c) (the purpose of the DNA data base is to assist with detection and prosecution of persons responsible for sex offenses and other crimes).

The state court's rejection of petitioner's claim that suspicionless searches violate the Fourth Amendment was not contrary to federal law.  See United States v. Kincade, 379 F.3d at 839 (holding that a person subject to conditional release may be compelled to provide a DNA sample in the absence of individualized suspicion of criminal activity without violating the Fourth Amendment); Rise, 59 F.3d at 1562-63 (holding that Oregon statute requiring certain prisoners to provide blood samples to DNA data bank does not violate Fourth Amendment).

B.  Second Claim

Petitioner's second claim is that the trial court's exclusion of exculpatory evidence violated petitioner's right to present a complete defense.

7

1    The Court of Appeal addressed this claim as follows:

2    Opinion evidence, reputation evidence, and evidence of specific
     instances of a complaining witness's sexual conduct is not
3    admissible by a defendant to prove consent of the complaining
     witness. (Evid. Code, § 1103, subd. (c)(1).)  However, evidence of
4    a complaining witness's sexual conduct is admissible through
     detailed procedural steps, if the evidence is offered to attack the
5    complaining witness's credibility. (Evid. Code, § 782.)  The party
     seeking to introduce such evidence must file a written motion that
6    sets forth an offer of proof of the "relevancy of evidence of the
     sexual conduct of the complaining witness . . . and its relevancy in
7    attacking the credibility of the complaining witness." (Evid. Code,
     § 782, subd. (a)(1).)  The written motion must be accompanied by
8    an affidavit in which the offer of proof is actually stated. (Evid.
     Code, § 782, subd. (a)(2).)  The affidavit must be filed under seal.
9    (Ibid.) If the trial court finds that the offer of proof is sufficient, the
     court must order a hearing out of the jury's presence and allow the
10   complaining witness to be questioned about the offer of proof.
     (Evid. Code, § 782 Subd. (a)(3).)

11

12   [Petitioner's] attempt to admit evidence of R.W.'s sexual conduct
     failed procedurally.  First, [petitioner] did not state his offer of
13   proof in the accompanying affidavit. The affidavit consisted only
     of [petitioner's] counsel's declaration.  That declaration merely
14   stated, on information and belief, that R.W.'s medical records
     showed she had engaged in sexual intercourse one week before the
15   March 1997 incident and had a sexually transmitted disease; the
     declaration did not articulate how such information was relevant to
16   attack R.W.'s credibility.  Moreover, the record indicates that
     [petitioner] did not file the accompanying affidavit under seal.

17   The procedural requirements of Evidence Code section 782 are not
     a mere formality.  Evidence admitted under Evidence Code section
18   782 contains highly sensitive, personal information about a
     complaining witness.  The procedural safeguards of section 782
19   allow courts to limit public exposure of the complaining witness's
     prior sexual history and ensure that only evidence of sexual
20   conduct that is relevant to the complaining witness's credibility
     comes before a jury. (See *People v. Chandler* (1997) 56
21   Cal.App.4th 703, 708 (*Chandler*).)

22   [Petitioner's] attempt to admit evidence of R.W.'s sexual conduct
     also failed substantively.  The trial court gave [petitioner] the
23   benefit of the doubt by considering his offer of proof stated outside
     of the accompanying affidavit. The trial court also allowed
24   [petitioner] to supplement his offer of proof in court. Even then,
     [petitioner's] theories of relevance did not state how evidence of
25   R.W.'s sexual conduct was relevant to attack her credibility.

26   /////

First, [petitioner] argued that the evidence was relevant to explain the vaginal and/or rectal findings during R.W.'s evidentiary examination following the March 1997 incident.  However, [petitioner] had no medical basis to declare that the findings could be attributed to her prior sexual activity.  For example, [petitioner] could have filed a declaration under seal from his physician expert or another qualified medical professional stating that it was possible for the evidentiary examination findings to be attributed to other sexual activity apart from the sexual acts with [petitioner].  The trial court thus did not err in concluding that the offer of proof was insufficient in this respect.

Second, [petitioner] argued that the chlamydia evidence was relevant to show that the vaginal and rectal findings of pain may have been caused by the infection.  Again, [petitioner] had no medical basis to declare that it is possible for soreness or tenderness during a sexual assault examination to be attributed to a sexually transmitted disease, specifically chlamydia.

In any event, [petitioner] attempted to use both the sexual activity one week prior to the March 1997 incident and the chlamydia evidence to attack the medical findings from the evidentiary examination.  The only permissible use of evidence of a complaining witness's prior sexual conduct is to attack the complaining witness's credibility. (Evid. Code, § 782, subd. (a).)  Here, R.W. testified that [petitioner's] sexual acts were not consensual and [petitioner] testified that they were.  [Petitioner] did not sufficiently show how the prior sexual activity evidence (involving a different participant than [petitioner]) would be relevant to show that the sexual acts at issue were consensual; moreover, Evidence Code section 1103, subdivision (c)(1), would come into play (specific instances of the complaining witness's sexual conduct inadmissible to prove consent).

There was a credibility question regarding whether anal intercourse occurred.  [Petitioner] claimed, contrary to R.W.'s testimony, that he never had anal intercourse with R.W.  The evidence of sexual conduct one week prior to the March 1997 incident may have been relevant to show that the medical findings in R.W.'s anal area from the evidentiary examination were attributable to prior anal intercourse activity.  Again however, [petitioner] did not offer any medical basis to support this contention in his offer of proof; he merely left the matter to rank speculation.  He also failed to show whether the sexual activity one week prior to the March 1997 incident involved anal intercourse; defense's counsel's declaration (the "offer of proof") merely stated "sexual intercourse" was performed.

Finally, [petitioner] contended that both pieces of evidence were relevant to show that R.W. had the ability to describe sexual acts other than from the March 1997 incident with the [petitioner].

9

Relevant evidence is "evidence . . . having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210, italics added.) It was never disputed that 17-year-old R.W. had the ability to describe the sexual acts at issue notwithstanding the March 1997 incident. This theory of relevance is more appropriately used in cases where the complaining witness is very young and a jury would not expect such a young child to have any knowledge of sexual acts or to be able to describe such acts explicitly unless the child had been a victim of prior sexual acts. (See *People v. Daggett* (1990) 225 Cal.App.3d 751.) Since R.W.'s ability to describe the sexual acts in question was never disputed, [petitioner's] theory of relevance fails.

For the same reasons, the trial court did not abuse its discretion in ruling that Evidence Code section 352 also foreclosed the admission of the prior sexual conduct evidence (prejudice outweighed probative value). (*Chandler, supra*, 56 Cal.App.4th at p. 711.)

(People v. Barajas, slip op. at 9-14.)

"[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions." Estelle v. McGuire, 502 U.S. at 67. Because federal habeas relief does not lie for state law errors, a state court's evidentiary ruling is grounds for federal habeas relief only if it renders the state proceedings so fundamentally unfair as to violate due process. Drayden, 232 F.3d at 710; Spivey v. Rocha, 194 F.3d 971, 977-78 (9th Cir.1999), cert. denied, 531 U.S. 995, 121 S.Ct. 488 (2000); Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir.1991). In a federal habeas proceeding, the court must assess whether the improper exclusion of evidence violated due process by examining "the probative value of the evidence on the central issue; its reliability; whether it is capable of evaluation by the trier of fact; whether it is the sole evidence on the issue or merely cumulative; and whether it constitutes a major part of the attempted defense." Drayden, 232 F.3d at 711 (quoting Miller v. Stagner, 757 F.2d 988, 994 (9th Cir.), amended on denial of reh'g, 768 F.2d 1090 (9th Cir.1985)). A defendant's right to present evidence is not absolute; he must comply with established rules of evidence and procedure. Carriger v. Lewis, 971 F.2d 329, 333 (9th Cir.1992). A criminal defendant "does not have an unfettered right to offer [evidence] that is incompetent, privileged, or otherwise

1  inadmissible under standard rules of evidence." Montana v. Egeloff, 518 U.S. 37, 42, 116 S.Ct.

2  2013 (1996) (quoting Taylor v. Illinois, 484 U.S. 400, 410, 108 S.Ct. 646 (1988)).

3          Criminal defendants have a constitutional right, implicit in the Sixth Amendment,

4  to present a defense; this right is "a fundamental element of due process of law." Washington v.

5  Texas, 388 U.S. 14, 19, 87 S.Ct. 1920 (1967).  See also Crane v. Kentucky, 476 U.S. 683, 687,

6  690, 106 S.Ct. 2142 (1986); California v. Trombetta, 467 U.S. 479, 485, 104 S.Ct. 2528 (1984);

7  Webb v. Texas, 409 U.S. 95, 98, 93 S.Ct. 351 (1972).  However, the constitutional right to

8  present a defense is not absolute.  Alcala v. Woodford, 334 F.3d 862, 877 (9th Cir.2003).  "Even

9  relevant and reliable evidence can be excluded when the state interest is strong."  Perry v.

10  Rushen, 713 F.2d 1447, 1450 (9th Cir.1983).  Thus,

11          [w]here evidence has been excluded pursuant to a state evidentiary
            law, we use a balancing test:  In weighing the importance of
12          evidence offered by a defendant against the state's interest in
            exclusion, the court should consider the probative value of the
13          evidence on the central issue; its reliability; whether it is capable of
            evaluation by the trier of fact; whether it is the sole evidence on the
14          issue or merely cumulative; and whether it constitutes a major part
            of the attempted defense.  A court must also consider the purpose
15          of the [evidentiary] rule; its importance; how well the rule
            implements its purpose; and how well the purpose applies to the
16          case at hand.  The court must give due weight to the substantial
            state interest in preserving orderly trials, in judicial efficiency, and
17          in excluding unreliable or prejudicial evidence.

18  Alcala, 334 F.3d at 877 (quoting Miller v. Stagner, 757 F.2d 988, 994 (9th Cir.1985)).  See also

19  Drayden, 232 F.3d at 711.  A state law justification for exclusion of evidence does not abridge a

20  criminal defendant's right to present a defense unless it is "arbitrary or disproportionate" and

21  "infringe[s] upon a weighty interest of the accused."  United States v. Scheffer, 523 U.S. 303,

22  308, 118 S.Ct. 1261 (1998).  See also Crane, 476 U.S. at 689-91 (discussion of the tension

23  between the discretion of state courts to exclude evidence at trial and the federal constitutional

24  right to "present a complete defense"); Greene v. Lambert, 288 F.3d 1081, 1090 (9th Cir.2002).

25          The right to confront witnesses, guaranteed by the Sixth and Fourteenth

26  Amendments, includes the right to cross-examine adverse witnesses to attack their general

11

1   credibility or show their possible bias or self-interest in testifying.  Olden v. Kentucky, 488 U.S.

2   227, 231, 109 S.Ct. 480 (1988); Delaware v. Van Arsdall, 475 U.S. 673, 678-79, 106 S.Ct. 1431

3   (1986); Davis v. Alaska, 415 U.S. 308, 316, 94 S.Ct. 1105 (1973).  A Confrontation Clause

4   violation occurs where the defendant is prevented from investigating "a prototypical form of

5   bias" if "[a] reasonable jury might have received a significantly different impression of [the

6   witness'] credibility had respondent's counsel been permitted to pursue his proposed line of

7   cross-examination").  Van Arsdall, 475 U.S. at 680.  However, "[t]rial judges retain wide latitude

8   insofar as the Confrontation Clause is concerned" and may impose limitations on

9   cross-examination that are "reasonable" and are not "arbitrary or disproportionate to the purposes

10  they are designed to serve."  Id. at 679; Michigan v. Lucas, 500 U.S. 145, 151, 111 S.Ct. 1743

11  (1991).  "The Confrontation Clause guarantees an opportunity for effective cross-examination,

12  not cross-examination that is effective in whatever way, and to whatever extent, the defense

13  might wish."  Van Arsdall, 475 U.S. at 679 (quoting Delaware v. Fensterer, 474 U.S. 15, 20, 106

14  S.Ct. 292 (1985) (per curiam)).  A defendant does not have a right to present irrelevant evidence.

15  Wood v. State of Alaska, 957 F.2d 1544, 1549 (9th Cir.1992).  The determination of whether

16  evidence is relevant rests in the discretion of the trial court.  Id.

17        A two-part inquiry is appropriately used to determine whether a criminal

18  defendant's Sixth Amendment rights were violated by the exclusion of evidence.  Wood, at

19  1549-50.  First, the court looks at whether the evidence was relevant.  Id. at 1550.  If the evidence

20  is relevant, the court looks at whether "legitimate interests outweighed [the defendant's] interest

21  in presenting the evidence."  Id.  A Sixth Amendment violation will only be found if the trial

22  court abused its discretion in making its evidentiary ruling.  Id.  A trial court does not abuse its

23  discretion so long as the jury has "sufficient information" upon which to assess the credibility of

24  witnesses.  Wood, 957 F.2d at 1550 [Citations omitted.].

25        The improper denial of a defendant's opportunity to impeach a witness for bias is

26  subject to a harmless-error analysis.  Van Arsdall, 475 U.S. at 684; Bockting v. Bayer, 399 F.3d

1010, 1020 (9th Cir.2005) ("Confrontation Clause violations are subject to harmless error analysis and thus may be excused depending on the state of the evidence at trial").  Thus, petitioner is not entitled to relief unless he can establish that the trial court's error "had substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637, 113 S.Ct. 1710 (1993).  See also Forn v. Hornung, 343 F.3d 990, 999 (9th Cir.2003) (finding that a Confrontation Clause error did not have a "substantial and injurious" effect on the verdict and that the error was therefore harmless).

In the instant case, petitioner filed a motion to introduce evidence of the victim's sexual conduct (CT 198-202) and the prosecution filed a motion to exclude said evidence (CT 203-05).  The trial court found that petitioner failed to make a sufficient showing to allow admission of the evidence, but that even if it did, the potential prejudice to its admission outweighed its relevance and probative value.  (RT 13-14.)

Petitioner argues that the evidence of the victim's sexual activity the week prior to the instant offense was relevant to demonstrate that his sexual contact with the victim was consensual, and that the evidence that the victim had chlamydia at the time of the alleged assault "would have provided the jury with an innocent explanation for some of the minor vaginal trauma which the alleged victim displayed." (Pet. at 8.)  Petitioner, however, has failed to show how this evidence demonstrated the victim consented to have sex with petitioner on March 20, 1997.  The fact that the victim had consensual intercourse with someone else one week prior to March 20, 1997, does not, without more, provide evidence that she consented to have sex with petitioner on March 20, 1997.  Moreover, petitioner presented no medical evidence to support his theory that chlamydia would cause some of the minor vaginal trauma the victim experienced.

/////

/////

/////

/////

1   The state court properly weighed the victim's prior sexual conduct, finding it was
2   procedurally lacking, not relevant and prejudicial to the victim.  This was a reasonable
3   application of the California state's rape shield law and protected the legitimate privacy rights of
4   the victim.

5   The record reflects that both the victim and petitioner testified at trial and both
6   were subject to cross-examination.  The jury began deliberations on February 2, 2005 at 4:20
7   p.m. and rendered their verdicts two days later, on February 4, 2005 at 3:10 p.m.  (CT 338; 391.)
8   The jury submitted three requests during their deliberations.  The first addressed elements of the
9   charge of kidnapping to commit robbery and/or commit sex crimes.  (CT 342.)  The second
10  sought readback of testimony by Officer Woodel, and the victim's testimony regarding oral
11  copulation.  (CT 345.)  The third requested readback of the victim's testimony concerning when
12  she was picked up at Pritz' Market.  (CT 346.)

13  Based on the foregoing, this court cannot find that the trial court abused its
14  discretion in making its evidentiary ruling.  Id.  There was sufficient information before the jury
15  to assess the credibility of the victim as a witness.

16  The state court's findings were not contrary to or an unreasonable application of
17  clearly established Federal law.  This claim should also be denied.

18  For the foregoing reason, IT IS HEREBY ORDERED that petitioner's application
19  for a writ of habeas corpus is denied.

20  DATED: December 15, 2009.

21
22
23                                    UNITED STATES MAGISTRATE JUDGE
24  001; bara1337.157
25
26

14